**United States District Court**
**District of Massachusetts**

```
                                   )
WILLIAM MORGAN,                    )
                                   )
          Plaintiff,               )
                                   )
          v.                       )     Civil Action No.
                                   )     12-12151-NMG
RELIANCE STANDARD LIFE INSURANCE )
COMPANY and FALLON CLINIC LONG   )
TERM DISABILITY PLAN,              )
                                   )
          Defendants.              )
                                   )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of the termination of plaintiff

William Morgan's long-term disability benefits by defendants

Fallon Clinic Long Term Disability Plan and Reliance Standard

Life Insurance Company.  Pending before the Court are the

parties' cross-motions for summary judgment. For the reasons

that follow, defendants' motion will be allowed and plaintiff's

motion will be denied.

**I.   Background**

Plaintiff William Morgan ("Dr. Morgan" or "plaintiff") is

an orthopedic surgeon who suffers from mental health issues and

addiction.  He was previously employed by the Fallon Healthcare

System as the Chair of the Department of Orthopedic Surgery and

Podiatry at Fallon Clinic.

-1-

In September, 2009, Dr. Morgan entered an inpatient
treatment program where he was diagnosed with alcohol
dependence, opiate abuse and cocaine abuse. Shortly thereafter,
he applied for long-term-disability ("LTD") benefits under his
employer's Fallon Clinic Long Term Disability Plan ("the Plan").
The Plan is an employee welfare benefit plan as defined by the
Employee Retirement Income Security Act of 1974 ("ERISA") and
provides up to two years of coverage for individuals who cannot
work due to substance abuse issues. It is administered and
funded by Reliance Standard Life Insurance Company ("Reliance").

In February, 2010, after conducting a telephone interview
with plaintiff and obtaining copies of his treatment records,
Reliance determined that Dr. Morgan met the Plan's definition of
"total disability," which requires that

> as a result of an injury or sickness...an insured
> cannot perform the material duties of his/her regular
> occupation.

Reliance approved Dr. Morgan's claim and began to award him
$12,000 per month.

In August, 2010, a year after plaintiff ceased working,
Reliance requested updated medical records from plaintiff's
doctor, Dr. Richard Tomb. The records submitted consisted of
brief shorthand notes from weekly sessions between Dr. Tomb and
plaintiff. Although sparse, the records generally indicated
plaintiff had been sober since late January or early February,

-2-

2010, had begun studying for board exams in June, 2010, and was working in some capacity. Based upon those updated records, Reliance determined Dr. Morgan no longer qualified as totally disabled under the Plan.

Reliance terminated plaintiff's LTD benefits in September, 2010. Plaintiff received a termination letter which explained Reliance's decision. The letter also informed him that he could request a review of his claim by submitting a written request to Reliance's Quality Review Unit. The letter stated that, to have his claim reviewed, plaintiff needed to submit a written request within 180 days of his receipt of the letter explaining why he felt the determination was incorrect and to provide any documents or records that he wanted Reliance to consider. The letter further informed plaintiff that he would receive only one review of his claim.

On September 27, 2010, plaintiff wrote a letter to Reliance expressing "dismay" at their decision. The letter was addressed to the claims examiner who had sent plaintiff his termination letter rather than to the Quality Review Unit. Plaintiff informed Reliance that he continued to see Dr. Tomb on a weekly basis. He wrote that he believed he remained totally disabled to practice orthopedic surgery due to his alcoholism and asked Reliance to "please consider this statement so I may continue to financially survive."

-3-

Reliance appears to have been unsure whether Dr. Morgan's letter in fact sought to institute an appeal. Reliance's internal records show that, after receiving Dr. Morgan's letter, an employee wrote "[would] you review letter rec'd 9/29? send to appeals?" and later that day again asked "[send] to appeals?"

In any event, Reliance treated plaintiff's letter as an appeal. In October, 2010, Reliance sent a letter to Dr. Morgan advising him that it had received his letter "requesting a review" and that a review was being conducted. The letter instructed plaintiff to contact a Senior Benefit Analyst if plaintiff had new or additional information regarding the appeal. Reliance wrote plaintiff several weeks later and again in November, 2010 to explain that they were having difficulty contacting Dr. Morgan's physician, Dr. Tomb, and that the appeal would be delayed until they received updated records. At some point between mid-November and early December, Dr. Tomb sent Reliance his notes from the weekly sessions with plaintiff. Dr. Morgan did not submit any materials during this time period.

In December, 2010 Reliance referred plaintiff's claim to Dr. Todd Antin ("Dr. Antin"), a board certified addiction psychiatrist. Dr. Antin reviewed the entirety of plaintiff's file, including the updated notes from Dr. Tomb, and concluded that plaintiff did not meet the Plan's definition of total disability. In January, 2011, Reliance informed plaintiff by

-4-

mail that it had affirmed the original determination that plaintiff no longer qualified for LTD benefits and permanently closed plaintiff's claim.

In March, 2011, counsel for Dr. Morgan requested that Reliance reopen Dr. Morgan's claim and permit him to submit additional medical records and other information.  Reliance denied the request and stated Dr. Morgan's claim was now closed and it would not consider any additional information.

## II.  **Cross-Motions for Summary Judgment**

In his motion, plaintiff urges the Court to remand his claim to Reliance to conduct the "full and fair" review to which he is entitled under 29 U.S.C. § 1133(2).  Defendants contend that plaintiff has already received a full and fair review and therefore there is no basis upon which to remand the case.

### A.  **Legal Standard**

In ERISA cases, the district court's function resembles that of an appellate court:

It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.

Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002). Summary judgment is "merely a mechanism to resolve the case, and no special inferences need be drawn to resolve doubts in favor of the non-moving party." Reeder v. Sun Life Assur. Co. of Can.,

Inc., 497 F. Supp. 2d 125, 128 (D. Mass. 2007) (citing Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003)).

The denial of benefits by plan administrators is subject to de novo review unless the plan provides such decision-makers "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where such discretionary authority exists, the Court must apply "a deferential arbitrary and capricious standard of judicial review." Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). Under this standard, defendant's administrative decision "must be upheld if it is reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004). It is a hallmark of this review that "a court is not to substitute its judgment for that of the [decision maker]." Terry, 145 F.3d at 40.

In this case, the administrative decision at issue is whether Reliance provided plaintiff with a "full and fair review" of his claim after terminating his benefits. Administrators of employee benefit plans covered by ERISA must afford a reasonable opportunity for a full and fair review to any participant whose claim for benefits is denied. 29 U.S.C. § 1133(2). The full and fair review process "protect[s] a plan

-6-

participant from arbitrary or unprincipled decision-making."
Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31 (1st
Cir. 2005).  When such unprincipled decision-making denies a
plan participant a full and fair review, the plan administrator
has acted arbitrarily or capriciously. See id.

**B.  Application**

Plaintiff argues that Reliance's review of his claim was
unprincipled and arbitrary in three inter-related ways: (1) its
decision to treat Dr. Morgan's September 27, 2010 letter as an
appeal, (2) its failure to obtain certain information from his
treating physician, to conduct a vocational review, or consider
his risk of relapse during the review it conducted, and (3) its
refusal to consider new evidence after completing the review.
The Court considers each of those grounds seriatim.

**1.  Treatment of Plaintiff's September, 2010 Letter**

Plaintiff argues he was denied a full and fair review of
his claim because defendant unjustifiably chose to treat his
September 27, 2010 letter as a request for appeal.  Plaintiff
contends that his letter was simply an expression of frustration
with Reliance's decision.  He argues that it was clear that he
did not intend to initiate an appeal and yet Reliance used his
letter as an excuse to conduct a hasty, incomplete review and
then forever close his claim and the record before this Court.

-7-

Some facts support the view that Dr. Morgan's letter was not intended to initiate an appeal. For instance, the letter did not explicitly request a review, but rather asked defendant to "please consider" plaintiff's dismay at abruptly losing his LTD benefits. Furthermore, although Reliance's termination letter instructed plaintiff to submit any appeal to the "Quality Review Unit," Dr. Morgan's letter was addressed to the claims administrator who wrote his termination letter. The letter was not accompanied by any supplementary materials in support of an appeal. Finally, Reliance's records reveal that the employee who received the letter asked twice if it was appropriate to forward the letter to the appeals department.

Nevertheless, Reliance's decision to treat plaintiff's letter as a request for appeal was a procedural misstep. In the First Circuit, a procedural irregularity in the review of benefit claim renders the resulting decision invalid only if the claimant is "prejudice[d] in a relevant sense" by the procedural flaw. DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 15-17 (1st Cir. 2005) (affirming district court's decision to require plaintiff to show that she had been prejudiced by plan administrator's failure to provide her with a full copy of her claim file).

Therefore, even if the Court assumes arguendo that Reliance erred in treating the letter as an appeal, plaintiff cannot

prevail unless he shows that he was prejudiced by that alleged
error. He has not made such a showing. First, plaintiff does
not contend the appeal process was conducted without his
knowledge. In fact, the administrative record reveals plaintiff
received multiple communications from Reliance referencing the
status of his appeal, including letters dated October 7, 2010,
October 13, 2010, and November 12, 2010. Nor can plaintiff
claim that Reliance's initiation of the appeal denied him the
right to provide evidence such as medical records in support of
his appeal. Plaintiff's termination letter informed him of his
right to appeal and right to provide supplemental evidence for
the process. Plaintiff provided no documents or evidence within
the 180 day appeal period. In sum, nothing suggests plaintiff
experienced prejudice as a result of Reliance interpreting his
letter as an appeal.

## 2.   Review of Plaintiff's Claim

Plaintiff next argues that Reliance acted arbitrarily and
capriciously in upholding its original determination that he no
longer qualified as totally disabled. He points to three
instances of allegedly capricious decision-making by Reliance:
(1) its failure to seek certain additional information from Dr.
Tomb, plaintiff's attending doctor, (2) its failure to consider
the requirements of plaintiff's occupation (otherwise known as a
"vocational analysis") when conducting the review and (3) its

-9-

failure to evaluate plaintiff's risk of relapse when reviewing
his eligibility for long-term disability benefits.

### a.  Failure to Contact Dr. Tomb

Plaintiff argues that he was denied a full and fair review
of his claim because Reliance did not obtain certain information
from plaintiff's treating physician, Dr. Tomb.  While Reliance
did contact Dr. Tomb and obtained updated treatment notes from
him, plaintiff argues Reliance should have also directly asked
Dr. Tomb, either by phone or through a request for an Attending
Physician Statement ("APS"), whether he believed plaintiff
remained totally disabled.

That argument is unavailing.  First, a claimant seeking
disability benefits under ERISA bears the burden of providing
evidence that he is disabled as defined by his or her benefits
plan. Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693,
700 (1st Cir. 2007) (quoting Wright v. R.R. Donnelley & Sons Co.
Group Benefits, 402 F.3d 67, 77 (1st Cir. 2005)).  Thus,
administrators of LTD plans governed by ERISA do not have an
affirmative duty to seek out evidence of an insured's total
disability.

Furthermore, Reliance's failure to contact Dr. Tomb by
phone or request an APS was not arbitrary or capricious and did
not deny Dr. Morgan a full and fair review of his claim for LTD
benefits.  The administrative record reveals that Reliance

-10-

diligently sought updated records for review.  On October 13,
2010, Reliance wrote to Dr. Tomb, explained they were reviewing
Dr. Morgan's eligibility for LTD benefits, and requested copies
of all records relating to plaintiffs' medical treatment.
Reliance also wrote to plaintiff informing him that they had
requested updated records from Dr. Tomb and stating that they
would not move forward with their review until the records were
received.  On November 12, 2010, Reliance again wrote to
plaintiff to inform him that they had not yet received updated
records from Dr. Tomb.  The letter asked plaintiff to contact
Dr. Tomb to help avoid delays in the appeals process.  This
diligence belies any claim that Reliance acted arbitrarily or
capriciously.

Finally, Dr. Antin did not indicate in his review that he
found the information provided by Dr. Tomb to be incomplete.
Plaintiff has failed to show that Reliance acted arbitrarily in
failing to seek additional information when it had no reason to
do so on this record.  Cf. Cannon v. Aetna Life Ins. Co., No. 12-
10512, 2013 WL 5276555, at *8-9 (D. Mass. Sept. 17, 2013)
(finding failure to obtain further medical records arbitrary
after physician reviewing claim file explicitly mentioned that
certain additional records would be beneficial to his review).

-11-

### b.   Failure to Conduct a Vocational Review

Plaintiff argues that Reliance failed to conduct a full and fair review because it did not evaluate his occupation when reviewing its determination that he no longer met the Plan's definition of total disability.  That claim does not stand up to scrutiny because Dr. Antin took plaintiff's profession into account in his report finding that plaintiff did not qualify as totally disabled.  In his report, Dr. Antin stated that plaintiff is an orthopedic surgeon by specialty who frequently performs surgical procedures.  Dr. Antin also explained that, in his opinion, there was insufficient medical evidence that plaintiff's psychological and substance abuse issues would prevent him from returning to his previous occupation as an orthopedic surgeon.  See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420–21 (1st Cir. 2000) (finding plan administrator's decision not to conduct further vocational analysis reasonable where doctors had "opined explicitly as to the limitations on [claimant's] ability to work").

### c.   Failure to Consider Risk of Relapse

Finally, plaintiff argues that Reliance's failure to consider his risk of relapse denied him a full and fair review.  That claim fails as well because the record is devoid of any evidence that plaintiff was at a risk of relapse.  Cf. Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assoc.

-12-

Long Term Disability Plan, 705 F.3d 58, 63-67 (1st Cir. 2013)
(finding plan administrator's categorical refusal to consider
whether risk of relapse rendered a claimant totally disabled to
be unreasonable when the record included the evaluations of
several medical professionals finding that the claimant was at a
high risk of relapse).

### 3. Refusal to Reopen Plaintiff's Claim

Finally, plaintiff argues that he was denied a full and
fair review because Reliance should have re-opened his appeal
and considered new evidence when he contacted Reliance on March
17, 2011. Plaintiff asserts that the terms of the Plan do not
limit him to just one appeal and so Reliance acted arbitrarily
in refusing to re-open his claim.

The Court disagrees. Reliance's appeal procedure
substantially complied with the requirements of ERISA and its
implementing regulations even though its documents describing
Plan benefits and procedures omit any procedures for appealing
the denial or termination of benefits. See Sorrells v. Sun Life
Assur. Co. of Can., 85 F. Supp. 2d 1221, 1231 (S.D. Ala. 2000)
(finding that ERISA does not appear to require that plan
administrators include appeals processes in their written plan
policies). Reliance outlined the appeal process in the
termination letter, informing plaintiff that he could "request a
review of [their] determination" and that the request needed to

-13-

be submitted within 180 days of plaintiff's receipt of the
letter. See 29 C.F.R. § 2560.503-1 (requiring plan
administrators to provide claimants with at least 180 days after
receiving notice of an "adverse benefit determination" to
appeal). The letter further outlined the process, explaining
that plaintiff should state why he felt the determination was
incorrect and instructing him to include any pertinent records
or other documents with his submission. The letter clearly
provided that "[o]nly one review will be allowed." Finally, the
letter informed Dr. Morgan that, under ERISA, he could bring a
civil action "following an adverse benefit determination on
review."

Nor was Reliance arbitrary or capricious in declining to
consider new information after the close of plaintiff's appeal.
Plaintiff failed to submit such information during the 180-day
period despite being informed of the appeal process and his
right to submit additional information. Reliance was under no
obligation to consider evidence submitted two months after the
appeal period had closed.

Plaintiff's claim that Reliance engaged in a "style of
'gotcha' appeal handling" is belied by the transparency of
Reliance's appeal process and frequent letters to Dr. Morgan
concerning the status of his appeal. Furthermore, the fact that
Reliance informed plaintiff that they would delay reaching a

-14-

final decision in order to permit Dr. Tomb to submit medical

records further suggests Reliance did not engage in hurried,

cursory review with the intent to deprive plaintiff of

meaningful participation.  The Court finds Reliance provided

plaintiff with a full and fair review of his claim for LTD

benefits and did not act arbitrarily or capriciously in refusing

to reopen his claim in March, 2011.

## ORDER

In accordance with the foregoing, plaintiff's motion for

summary judgment (Docket No. 24) is **DENIED** and defendants'

cross-motion for summary judgment (Docket No. 28) is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated March 3 , 2014

-15-